UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IKE ELIAS,<br>Plaintiff,<br>v.<br>WYNN LAS VEGAS, LLC,<br>Defendant. | Case No. 2:23-cv-2111-ART-BNW<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT (ECF No. 148) AND RELATED MOTIONS (ECF Nos. 166, 172, 174). |

Plaintiff Ike Elias brings this suit against Defendant Wynn Las Vegas, LLC alleging violations of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and Nevada State Law. Plaintiff alleges in his Third Amended Complaint ("TAC") (ECF No. 106) that Defendant failed to provide him reasonable accommodation, retaliated against him, and wrongfully terminated him for his disability. Defendant filed the present Motion for Summary Judgment (ECF No. 148) on all claims.

## I. Factual Background

Defendant Wynn Las Vegas, LLC, a hotel and casino property, offered Plaintiff Ike Elias the position of Security Officer in August 2021. (ECF Nos. 148-1 at 2, Dillehay Decl; 106 at 2.) As part of training and onboarding, new hire Security Officers attend two days of New Hire Orientation, then seven days of Security Academy training, followed by fifteen days of Field Training Officer ("FTO") training. (ECF No. 148-1 at 2.) The first ninety days of employment is probationary. (*Id*; ECF No. 148-2.) New hires must successfully complete the Security Academy to continue to FTO training. (*Id.*) Plaintiff was provided with a Job Summary that included these requirements, of which he acknowledged receipt on September 3, 2021. (ECF No. 148-2.)

Plaintiff attended New Hire Orientation on September 8 and 9, 2021. (ECF No. 148-3.) On September 11, 2021, Plaintiff was injured in a motor vehicle accident. (ECF Nos. 106 at 2; 164 at 3.) On September 13, 2021, the first day of the Security Academy, Plaintiff told Keith Haina, Defendant's Security Development and Training Manager, that he had been injured outside of work and was under the care of a doctor. (ECF No. 148-1 at 2; 148-4.) He completed Day 1 of the Security Academy. (*Id.*) The next day, he called out of work and did not attend Day 2 of the Security Academy. (*Id.*)

On September 15, 2021, Plaintiff returned to work and notified Mr. Haina that he called out of work the previous day to attend a doctor's appointment. (*Id*; 148-4.) He disclosed that he was in pain such that he could not work. (*Id*; ECF No. 164 at 3.) He also provided a letter from a medical professional from Align Med that said, "Mr. Ike Elias is currently being treated for a recent motor vehicle collision on 09/11/2021 where he sustained injuries to his neck and back. He will be treating with us 3 times per week for the first 4 weeks, 2 times per week starting the second month of treatment and 1 time every week starting the 3rd month of treatment." (ECF No. 19 at 15.) The notes from Plaintiff's initial visit include "subjective comments" from his provider, which most relevantly state, "[d]ue to the pain sustained in the collision, he is now having difficulties performing his daily routine." (*Id.* at 17.) Defendant then placed Plaintiff on an unpaid leave of absence that same day, "for a period of three weeks, or until [he] received medical clearance." (ECF Nos. 19 at 10; 148-1 at 3; 164 at 3.)

On October 6, 2021, Plaintiff provided a doctor's note from Timothy McCauley of Align Med, stating that "Mr. Elias was seen for chiropractic treatment due to being involved in a motor vehicle collision on 09/11/2021. Mr. Elias was advised he can return to work full duty. Restrictions: None." (ECF No. 148-5.)

Defendant then scheduled Plaintiff to attend the next available Security

Academy class which was set to begin on October 14, 2021. (ECF No. 148-1 at 4.) Plaintiff attended Day 1 of the Security Academy. (*Id.*) As part of the training requirements for the day, Plaintiff, like the other Security Officers in the class, was required to take and pass the written Day 1 Review Quiz with a score of 70% or better. (*Id.*) Mr. Elias scored a 20% on the Quiz and did not pass. (*Id.*; 148-6.)

On October 15, 2021, Plaintiff attended Day 2 of the Security Academy. (ECF No. 148-1 at 4.) Plaintiff and the other Security Officers in the class were required to take and pass the written Day 2 End of Day Quiz with a score of 70% or better. (*Id.*) Plaintiff scored 63.64% on the Quiz and as a result, did not achieve a passing score. (*Id.*; 148-7).

On October 18, 2021, Plaintiff attended Day 3 of the Security Academy. (ECF No. 148-1 at 4.) Plaintiff and the other Security Officers in the class were required to take and pass a written Basic Law / Use of Force Exam with a score of 70% or better. (*Id.*) Plaintiff scored a 50% on the exam and as a result, did not pass the Exam. (*Id.*; 148-8.)

On October 19, 2021, Plaintiff attended Day 4 of the Security Academy. (ECF No. 148-1 at 4.) Plaintiff and the other Security Officers in the class were required to take and pass a written ID Training Quiz Security with a score of 70% or better. (*Id.*) Plaintiff achieved a passing score of 72.72% on the Quiz. (*Id.*; 148-9.)

On October 21, 2021, Plaintiff attended Day 6 of the Security Academy, where Plaintiff and the other Security Officers were taught material regarding mechanical restraints and required to complete the Mechanical Restraint Certification, a practical test. (ECF No. 148-1 at 5.) Mr. Elias did not pass the Mechanical Restraints Certification. (*Id.*)

Defendant terminated Plaintiff's employment on October 21, 2021. (ECF No. 148-10.) His termination documentation states: "Reason for Termination: I-Failure to Complete Probation." (*Id.*) Plaintiff was escorted out of the workplace.

(ECF No. 106 at 2.)

## II. Legal Standard

### a. Objection to Magistrate Judge Orders

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a). A district court will thus defer to a magistrate judge's nondispositive order unless it is clearly erroneous or contrary to law. *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *24-7 Grp. of Companies, Inc. v. Roberts*, No. 3:13-CV-00211-MMD-WGC, 2014 WL 12707232, at *2 (D. Nev. Nov. 21, 2014) (quoting *United States v. Ressam*, 593 F.3d 1095, 1118 (9th Cir. 2010)). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Id.* (quoting *Conant v. McCoffey*, C97–0139, 1998 WL 164946, at *2 (N.D. Cal. Mar.16, 1998)).

### b. Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is

genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *Id.*

In determining summary judgment, courts apply a burden-shifting analysis. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an essential element of the nonparty's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the non-movant will bear the burden of proof at trial. *See id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts...must be viewed in the light most favorable to the party opposing the motion," *id.* (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). Instead, to survive summary judgment, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing admissible evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

## III. Analysis

### a. Pending Motions

The Court first addresses two pending motions related to the Motion for Summary Judgment.

On March 6, 2026, Plaintiff moved to compel further discovery (ECF No. 165) and defer summary judgment pending that discovery (ECF No. 166). Magistrate Judge Brenda Weksler denied the Motion to Compel on March 18, 2026. (ECF No. 167.) Pursuant to that order, this Court denies Plaintiff's Motion to Defer Summary Judgment. (ECF No. 166.)

On March 30, 2026, Plaintiff moved to file a sur-reply to the Motion for Summary Judgment. (ECF No. 174.) Defendant opposed. (ECF No. 175.) Because Plaintiff already had the opportunity to file a Reply to the Motion for Summary Judgment, the Court denies Plaintiff's Motion for Leave to File a Sur-Reply.

Therefore, currently pending before the Court are Plaintiff's Objection to Judge Weksler's Order denying in part Plaintiff's Motion to Withdraw Deemed Admissions (ECF No. 172) and Defendant's Motion for Summary Judgment (ECF No. 148.)

### b. Objection to Magistrate Judge Order

Plaintiff objects to Judge Weksler's finding that Plaintiff cannot withdraw or amend his response to Defendant's request for admissions from May 8, 2025. Judge Weksler concluded that his request should be denied because he could not show that withdrawal "would promote the presentation of the merits of the action," *see Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). Plaintiff argues that allowing the deemed admissions to stand "would preclude presentation of Plaintiff's ADA claim." (ECF No. 172 at 3.)

Federal Rule of Civil Procedure 36 provides that matters addressed in requests for admission are admitted and conclusively established unless the responding party serves an answer or objection within 30 days or the "court, on

motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(a)(3), (b). A party may be permitted to withdraw its admissions if (1) withdrawal "would promote the presentation of the merits of the action" and (2) "the party who obtained the admission fails to satisfy the court that withdrawal... will prejudice that party in maintaining or defending the action on the merits." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). The district court must consider these two prongs—presentation of the merits and prejudice—and should do so in view of the two goals that the rule serves: truth seeking and efficiency. *Id.*

The merits test is satisfied where upholding the admissions would "practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).

The Court finds that Judge Weksler did not commit clear error. In response to Request for Admission No. 34, which states: "Admit that, during your employment with Defendant, you did not tell Defendant that you had a disability," Plaintiff gave a several paragraph response that began, "Plaintiff agrees with the assertion that, during Plaintiff's employment with Defendant, Plaintiff did not have a disability as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102(1)." (ECF No. 168 at 1.) He then goes on to qualify that response:

> However, Plaintiff clarifies that while Plaintiff may not have had a long-term or permanent disability, Plaintiff's condition, which resulted from the motor vehicle accident on September 11, 2021, did cause significant impairments in major life activities such as walking, lifting, concentrating, and working. These limitations, whether short-term or long-term, are considered disabilities under the ADA.
>
> Furthermore, even if Plaintiff's condition did not rise to the level of a long-term disability, Plaintiffs injury and its limitations qualify as a disability under the ADA's "regarded as" provision. As established in Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521 (1999), the ADA protects individuals who are perceived by their employer as having a disability,

> regardless of whether the impairment is long-term or permanent.
>
> Plaintiff asserts that Defendant's response to Plaintiff's medical condition—including reassignment, failure to engage in the interactive process, and failure to provide reasonable accommodations— suggests that Defendant regarded Plaintiff as having a disability. Such actions support the claim that Plaintiff was "regarded as" having a disability during the course of employment.
>
> Therefore, while Plaintiff agrees with the assertion that the condition may not meet the definition of a long-term disability under the ADA, Plaintiff maintains that the condition nevertheless qualifies as a disability under the ADA's "regarded as" provision.

(ECF No. 148-15 at 3.)

Judge Weksler found that Plaintiff's response was "deliberate and well-thought-out," and therefore aids resolution of the case on the merits. (ECF No. 168 at 3.) Plaintiff's objection claims that the admissions "go directly to core liability issues." (ECF No. 172 at 3.) He claims that denying withdrawal would act as a "de facto dispositive sanction" that "forecloses the presentation of causation evidence." (*Id.* at 4.) Judge Weksler concluded that "permitting Plaintiff to withdraw or amend a deliberate, considered admission merely because he later recognizes its adverse impact does not advance the underlying purposes of Rule 36." (ECF No. 168 at 4.) As discussed below, Defendant's Motion for Summary Judgment is not based solely on Plaintiff's admissions. *See Conlon*, 474 F.3d at 622 (finding that the first prong of the test on the merits was met because the defendant filed its motion for summary judgment based on the deemed admissions). Therefore, the Court agrees with Judge Weksler that Plaintiff's admissions should not be withdrawn.

**c. Summary Judgment**

Defendant argues that summary judgment should be granted in its favor because Plaintiff cannot show that he had a disability nor was he a qualified individual under the ADA, which makes him ineligible for relief under the statute

for any of his causes of action. Alternatively, Defendant argues that should Plaintiff be found to have a disability and be qualified, it provided him with reasonable accommodation, terminated him for failing to successfully complete his probationary period, and did not retaliate against him for requesting an accommodation.

**i. ADA Failure to Accommodate**

To establish a prima facie claim of disability discrimination under the ADA under any theory of failure to accommodate, a plaintiff must show that: (1) he is disabled within the meaning of the ADA, (2) he is a qualified individual with a disability, (3) he requested an accommodation, (4) the employer knew of the requested accommodation, and (5) the employer failed to reasonably accommodate his disability. *Pham v. Las Vegas Superstore, Inc.*, 2015 WL 1906345, at *2 (D. Nev. Mar. 12, 2015) (citing *Sanders v. Arneson*, 91 F.3d 1351, 1353 (9th Cir. 1996)). "Generally, an employee must initially request the accommodation, but if the employer knows the employee is disabled and [is] having workplace problems as a result, it may not be required the employee make the initial request." *Id.* (citing *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001)). Further, there is no duty to accommodate an employee who makes a claim based on perceived disability. *Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003).

Because Mr. Elias is *pro se*, "we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 922-923 (9th Cir. 2004) (internal citations omitted).

**1. Actual Disability**

Plaintiff claims he suffered injuries in a motor vehicle accident (ECF Nos.

106 at 2; 154 at 2) and that he "disclosed medical limitations affecting major life activities, including walking, lifting, concentrating, and working" to Defendant (ECF No. 164 at 3.) The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

As Defendant acknowledges, Plaintiff notified Keith Haina, former Security Development and Training Manager, that he had been injured and called out of work because he went to see a doctor and was in some pain. (ECF No. 148-1 at 2-3.) Plaintiff alleges that he provided a note from Timothy McCauley at Align Med dated September 14, 2021, that stated that Plaintiff "is currently being treated for a recent motor vehicle collision on 09/11/2021 where he sustained injuries to his neck and back. He will be treating with us 3 times per week for the first 4 weeks, 2 times per week starting the second month of treatment and 1 time every week starting the 3rd month treatment." (ECF No. 19 at 15.) The notes from Plaintiff's initial visit include "subjective comments" from his provider, which most relevantly state, "[d]ue to the pain sustained in the collision, he is now having difficulties performing his daily routine." (*Id.* at 17.) This evidence is sufficient to establish a genuine dispute of material fact as to whether Plaintiff had an actual disability at the time he was placed on leave in September 2021.

**2. Qualified Individual**

Defendant argues that even assuming Plaintiff did have an actual disability under the statute, he was not a qualified individual because he had not completed the Security Academy, a threshold job requirement of the Security Officer position, at the time he was placed on leave. A "qualified individual," is an individual who: (1) satisfies the requisite skill, experience, education and other job-related requirements of the position; and (2) can perform the essential functions of the employment position with or without an accommodation. 42

U.S.C. § 12111(8). An individual's qualifications are measured at the time of the adverse employment action, rather than at some earlier or later time. *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1129 (9th Cir. 2020).

For his claim for reasonable accommodation, Plaintiff's qualifications would be measured at the time that he was placed on medical leave. In his TAC, Plaintiff claims that at that time he was placed on medical leave, his work was considered "satisfactory" and he was part of the "elite group" during orientation. (ECF No. 106 at 21.) Defendants argue that New Hire Orientation and the Security Academy "are different programs, and Plaintiff has produced no evidence indicating that satisfactory performance in one is apropos to the other." (ECF No. 148 at 16.) Because Plaintiff was qualified at the time to enter the Security Academy at the time he was placed on medical leave, he satisfies this element for the purposes of summary judgment.

**3. Reasonable Accommodation**

Plaintiff alleges that once Defendant knew he had a disability, it failed to engage in the interactive process required by the ADA to identify a reasonable accommodation. (ECF No. 164 at 5.) Plaintiff argues that being placed on medical leave was not a proper accommodation for his disability. Defendant argues that it placed Plaintiff on medical leave at his own request and doing so was a facially reasonable accommodation.

Although a qualified employee with a disability is entitled to a reasonable accommodation, there is no requirement that an employer engage in an interactive process to identify a reasonable accommodation. The interactive process "requires (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective.'" *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir.2010) (quoting *Zivkovic v. S. Calif. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir.

2002)). "There exists no stand-alone claim for failing to engage in the interactive process," however. *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). "[D]iscrimination results from denying an available and reasonable accommodation." *Id.* The employer does not have to provide a particular accommodation requested or preferred by the employee; "'the employer need only provide some reasonable accommodation.'" *UPS Supply Chain Solutions*, 620 F.3d at 1110–11 (quoting *Zivkovic*, 302 F.3d at 1089; internal quotation marks omitted).

Here, Plaintiff has failed to identify any evidence disputing Defendant's claim that it provided him a reasonable accommodation by placing him on unpaid medical leave pending medical clearance to return to work. On September 15, 2021, Plaintiff expressed concern that he would not be able to complete the defensive tactics portion of the Security Academy because he was in pain. (ECF No. 154 at 2.) Plaintiff said the injuries "required time away from work to allow [him] time to recuperate." (ECF No 19 at 10.) In response, Defendant placed Plaintiff on unpaid medical leave for "three weeks, or until [he] received medical clearance." (*Id.*) Once Plaintiff returned with medical clearance, Defendant placed Plaintiff into the next Security Academy to complete his training. (ECF No. 148-1 at 3.) This is a textbook definition of a reasonable accommodation. *See Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001) ("a leave of absence for medical treatment may be a reasonable accommodation under the ADA"); *Dark v. Curry Cnty*, 451 F.3d 1078, 1090 (9th Cir. 2006) (same). While Plaintiff may have preferred a different accommodation, he fails to counter Defendant's evidence that the accommodation it provided, namely putting him on unpaid medical leave pending medical clearance to return to work, was reasonable. Therefore, Plaintiff's claim under a theory of failure to accommodate fails.

**ii. ADA Retaliation and Wrongful Termination**

Plaintiff's claims for retaliation and wrongful termination under the ADA

arise out of the Defendant's actions after placing him into the second Security Academy training. Defendant argues again that Plaintiff did not have an actual disability nor was he a qualified individual under the statute. The Court agrees that Plaintiff has failed to point to evidence disputing this these points.

On October 6, 2021, Plaintiff provided Defendant a letter from Align Med that stated, "Mr. Elias was seen for chiropractic treatment due to being involved in a motor collision on 09/11/2021. Mr. Elias was advised he can return to work full duty. Restrictions: None." (ECF No. 148-5.) Plaintiff offers no evidence to dispute this showing that he was cleared by his doctor to return to work without restrictions.

Absent evidence disputing his medical clearance to return to work or some other evidence of how Plaintiff was impaired at the time he was terminated, the Court cannot find that he was disabled under the ADA. *See Machlan v. Neven,* No. 3:13-CV-00337-MMD, 2015 WL 1412748 (D. Nev. Mar. 27, 2015), *aff'd*, 656 F. App'x 365 (9th Cir. 2016) ("At the summary judgment stage, a plaintiff does not establish the first element, 'disability,' by merely alleging that he is an 'individual with a disability' or proving that he has some particular physical or medical condition"); *Lightsy v. Hawai'i*, No. 05-00515 ACK/LEK, 2007 WL 9711220 at *8 (D. Haw. Feb. 14, 2007) (same).

Further, once Plaintiff was placed in new Security Academy, he failed three written exams and the Mechanical Restraint Certification. (ECF Nos. 148 at 16; 148-6, 148-7, 148-8.) Given that Plaintiff subsequently failed the job prerequisites to become a Security Officer, he has not provided evidence to create a genuine dispute of material fact as to whether he was a qualified individual for the Security Officer role.

Plaintiff argues that Defendant cannot argue both that he was not disabled and therefore not covered by the ADA and justify its accommodations in response to Plaintiff's request for medical leave, citing *Snead v. Metro. Prop. & Cas. Ins. Co.*,

237 F.3d 1080, 1088 (9th Cir. 2001). (ECF No. 164 at 4.) *Snead* does not stand for this proposition, which focuses on the application of Oregon discrimination law.

Therefore, the Court grants Defendant's Motion for Summary Judgment. (ECF No. 148.)

## IV. Conclusion

It is therefore ordered that Defendant's Motion for Summary Judgment (ECF No. 148) is GRANTED.

It is further ordered that Plaintiff's Motion to Defer Summary Judgment (ECF No. 166) is DENIED.

It is further ordered that Plaintiff's Objection to the Magistrate Judge's Order (ECF No. 172) is DENIED.

It is further ordered that Plaintiff's Motion for Leave to File a Sur-Reply (ECF No. 174) is DENIED.

It is further kindly ordered that the Clerk CLOSE this case.

Dated this 7th day of August, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE